IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATRINA M. HYCH, | ) | CASE NO. 3:16 CV 2658 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

**Introduction**

Before me[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Katrina M. Hych, for disability insurance benefits and supplemental security income. The Commissioner has answered[2] and filed the transcript of the administrative record.[3] Under my initial[4] and procedural[5] orders

---

[1] ECF # 23. The parties have consented to my exercise of jurisdiction

[2] ECF # 10.

[3] ECF # 11.

[4] ECF # 6.

[5] ECF # 12.

the parties have briefed their positions.[6] and filed supplemental charts[7] and the fact sheet.[8] They have participated in a telephonic oral argument.[9]

**A.     Background facts**

Hych who was 49 years old at the time of the administrative hearing,[10] is single and lives alone in an apartment.[11] She has an associate's degree in law enforcement.[12] Her past relevant employment history includes work as a loader/unloader, machine feeder, machine cleaner.[13]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Hych had severe impairments consisting of degenerative disc disease cervical spine and degenerative joint disease of the spine; bilateral rotator cuff syndrome, bursitis, and partial thickness rotator cuff tear in the right shoulder, status-post arthroscopic rotator cuff repair and arthroscopic subacromial decompression; status post right carpal tunnel syndrome and right cubital tunnel surgery; and psychiatric condition variously

---

[6] ECF # 13 (Hych's brief), ECF #18 (Commissioner's brief).

[7] ECF # 18-1 (Commissioner's charts); ECF # 13-2 (Hych's charts).

[8] ECF # 13-1.

[9] ECF # 22.

[10] ECF # 11, Transcript ("Tr.") at 41.

[11] *Id*. at 42.

[12] *Id*. at 44.

[13] *Id*. at 1422.

diagnosed as major depressive disorder, post traumatic stress disorder (PTSD), and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).[14] The ALJ made the following finding regarding Hych's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defines in 20 CFR 404.1567(b) and 416.967(b) except: occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds; frequently kneel, crouch or crawl; frequently reach overhead bilaterally; frequently handle with the right upper extremity; and no exposure to hazards, such as machinery and unprotected heights; work with an specific vocational preparation (SVP) of 1 to 2, where the pace of productivity is not dictated by an external source over which the claimant has no control, such as an assembly line or conveyor belt; and rare, defined as less than occasional but not completely precluded, contact with the general public; and occasional contact with coworkers.[15]

The ALJ decided that this residual functional capacity precluded Hych from performing her past relevant work as a loader/unloader, machine feeder, and machine cleaner.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Hych could perform.[17] The ALJ, therefore, found Hych not under a disability.[18]

---

[14] *Id*. at 1402.

[15] Id. at 1406.

[16] *Id*. at 1421-22.

[17] *Id*. at 1422-23.

[18] *Id*. at 1423.

**B.      Issues on judicial review**

Hych asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hych presents the following issues for judicial review:

- Whether the ALJ failed to properly consider whether plaintiff was unable to sustain competitive work activity for any period of at least 12 months in light of the VE's testimony that employers will tolerate absences of only one day per month, or ten days per year.[19]

- Whether the ALJ failed to account for the extreme ROM limitations in the physical therapy progress notes or properly explain his reasons for discounting those limitations.[20]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded.

**Analysis**

This case presents a narrow challenge to the RFC for a specific closed period between the April 2014 date on which Hych had spinal surgery and the August 2015 date when she had surgery on her hand. Essentially, Hych appears to concede that substantial evidence supports the RFC for the period before and after this closed period, but argues that the RFC adopted by the RFC for the entire period from the onset date to the date of decision is not supported by substantial evidence within the closed period.

---

[19] ECF # 13 at 8.

[20] *Id*. at 13.

In that regard, I note in particular that the closed period begins on May 21, 2014 when Hych had spinal surgery.[21] It extends through August 24, 2015 when Hych had carpal and cubital release surgery on the right hand.[22] Between those two surgeries, Hych had additional cervical surgery on January 2, 2015[23] and shoulder surgery in April 10, 2015.[24] Counsel argued that during this course of surgeries Hych could not frequently reach and lift consistent with the ALJ's RFC.[25] Of particular concern was the nonunion of the cervical spine that persisted for over seven months after the first surgery.[26] Counsel also argued that the four surgeries had to be done sequentially - neck, shoulder, the wrist; they could not all be done at the same time.[27] As a secondary argument, Hych maintains that during this 15-month period, her surgeries, recuperation, and necessary medical appointments and related procedures would have resulted in absenteeism that, according to the VE, would have rendered her unemployable.[28]

---

[21] Tr. 1215.

[22] *Id*. at 2329-30.

[23] *Id*. at 1270-71, 1289-91.

[24] *Id*. at 1805, 1812.

[25] Draft of Oral Argument Transcript of November 29, 2017 ("Draft") at 7-8, attached hereto as Attachment A.

[26] *Id*. at 7.

[27] *Id*. at 11.

[28] Tr. 71, 1494, 1533.

At the hearing before me, counsel for the Commissioner conceded that the ALJ did not address the closed period that serves as the foundation for Hych's argument. Rather the Commissioner contends that the ALJ adopted a "static" RFC for the entire relevant period based on a proper analysis of all the medical evidence, including that related to the surgeries that occurred during the closed period.[29] Counsel's rebuttal points are that the jobs actually identified by the VE did not require frequent reaching or lifting and that Hych had the burden of producing a source opinion that she had limitations greater than those in the RFC during the closed period. There is no such opinion in the record.[30]

Hych denies that the DOT rules out reaching and lifting as the Commissioner maintains.[31] Perhaps conceding that there is no opinion addressing the closed period per se, Hych argues "[t]here is not a surgeon in the United States of America" who would release a patient with nonunion of the cervical spine to do a job requiring the lifting of 10 pounds frequently.[32]

The ALJ does discuss the various surgeries in the closed period and various treatments, therapies, and evaluations after those surgeries.[33] Although one might reasonably conclude that the surgeries went without serious complications, and Hych

---

[29] Draft at 7.

[30] *Id*. at 8-9.

[31] *Id*. at 11.

[32] *Id*.

[33] Tr. 1410-12.

improved after each, the ALJ did acknowledge that the nonunion referred to by Hych's counsel did prompt the second cervical surgery.[34]

It does seem to defy common sense that Hych could function at the level described by the RFC and avoid unacceptable absences from employment while she had the four surgeries with the follow up required during the closed period.

I note that this is the second round of judicial review on these applications. In 2013, Judge Carr ordered a remand on stipulation for reconsideration of the opinions of Amy Clark, a certified nurse specialist, and Pratap Toreskar, M.D., a psychiatrist who supervised Clark.[35] The ALJ on remand extensively discussed the treatment given and evaluations written by Clark and Toreskar.[36] The ALJ weighed Clark's evaluations,[37] but refused to recognize Toreskar as a treating source because Clark examined, treated, and evaluated Hach, and Toreskar merely signed off as a supervisor.[38]

The Clark/Toreskar mental functional capacity evaluations support the secondary argument that Hych's absenteeism and inability to stay on task would preclude gainful employment. But as counsel for Hach made clear during the argument, his focus is on the inability to do light work because of limitations on reaching and lifting greater than those in

---

[34] *Id*. at 1410.

[35] *Id*. at 1567-70.

[36] *Id*. at 1414-18.

[37] *Id*. at 1419-20.

[38] *Id*. at 1419.

the RFC - exertional limitations rather than mental ones. No argument is made in the brief challenging the ALJ's analysis of the Clark/Toreskar opinions.

This comes down to whether there is substantial evidence from which to conclude that, despite the four surgeries over a 15 month period, Hach could have worked consistent with the capabilities set out in the RFC.

In just the 12-month period from May 2012 to May 2013, Ms. Hych spent 30 days in pain treatment, and was totally incapacitated for 56 days due to non-weight bearing following surgery.[39] And in just the 15-month period from May 2014 through August 2015, Hych underwent six separate surgical procedures, including three cervical surgeries, shoulder surgery, and a carpal and cubital surgical release.[40] We know for sure from the record that she was hospitalized for four days for her January 2015 cervical surgery,[41] and was ordered to avoid all normal activities for at least one day following her October 21, 2014 cervical surgery.[42] Assuming that the other four surgeries entailed from two to three days' recovery, she would have been incapacitated, and unable to work, for at least 16 days during that 15-month period. This does not even include the 14 days she was in physical therapy,[43] or

---

[39] *Id*. at 394, 396, 398-401, 403, 406, 409, 411, 464-72, 482-84

[40] *Id*. at 1215, 1270-71, 1289-91, 1309-10, 1320-21, 1805, 1812, 2329-30

[41] *Id*. at 1270-71, 1289-91.

[42] *Id*. at 1309-10.

[43] *Id*. at 1825.

the 15 to 30 days she would have been in treatment for depression just during this 15-month period.[44]

In addition to this evidence, the records shows the following notes from Hych's physical therapy from this "closed" period:

- September 4, 2014 - limited cervical range of motion (ROM) on all planes due to pain.[45]

- March 26, 2015 - severely limited cervical active ROM and high levels of pain, which limits activities of daily living, and significant limitations in the right shoulder.[46]

- May 8, 2015 - ROM of the left shoulder "fairly limited" due to left rotator cuff tear.[47]

- June 2, 2015 - inability to take the right shoulder into the end range.[48]

- June 4, 2015 - high pain levels limiting active and passive ROM of the right shoulder.[49] (Tr. 1818).

---

[44] *Id*. at 431, 433, 435, 437, 513, 517, 521, 525, 529, 533, 537, 541, 545, 549, 553, 557, 561, 563, 567, 569, 571, 575, 580, 582, 589, 594, 596, 601, 608, 615, 624, 626, 633, 638, 640, 645, 650, 652, 657, 659, 661, 663, 668, 670, 854, 859, 861, 1074, 1076, 1078, 1080, 1082, 1084, 1086, 1088, 1090, 1933, 1935, 1938, 1943, 1945, 1948, 1950, 1953, 1961, 1971, 1979, 1982, 2069, 2682.

[45] *Id*. at 946.

[46] *Id*. at 1804.

[47] *Id*. at 1812.

[48] *Id*. at 1817.

[49] *Id*. at 1818.

It is noted that the ALJ included no accommodations for these limitations in the RFC. Instead, he found Ms. Hych capable of occasional climbing, frequent postural activities, and frequent reaching overhead.[50] In fact, the ALJ found no limitations on reaching in any direction except overhead. Further, he failed to accommodate the documented limits on Ms. Hych's cervical ROM "on all planes" or the extreme limitations in her right and left shoulders.[51] Significantly, the progress notes rule out much more than just overhead reaching.[52]

## Conclusion

For the reasons stated above, I find that substantial evidence does not support the findings of the ALJ in this matter. I further find that in light of the foregoing, the decision of the Commissioner to deny benefits is hereby reversed and the matter remanded for further proceeding consistent with this opinion.

IT IS SO ORDERED.

Dated: March 28, 2018                          s/ William H. Baughman, Jr.
                                                                              United States Magistrate Judge

---

[50] *Id*. at 1406, Finding No. 5

[51] *Id.* at 946, 1804, 1812, 1817-18.

[52] *Id.*